Everyone may be seated. With the lawyers who can argue the case, please introduce yourself to the court. For the appellate, you want to reserve some time for rebuttal. Okay, let's proceed. Good morning. May it please the court. Again, my name is Benjamin Paulson, appearing on behalf of Petitioner Appellant Kathleen Richardson as pro bono counsel. At the heart of the Illinois Domestic Violence Act is the intent and desire to protect victims of domestic violence and to streamline the process to prevent future abuse through the issuance of orders of protection. And so that the core of every analysis under the IDVA is the petitioner. And, in fact, the central question to be answered in any order of protection proceeding is whether the petitioner was abused. And the Illinois legislature made it very clear that in effectuating this intent and this purpose, that where abuse has occurred, an order of protection shall issue. Despite this clear mandate by the state legislature, through the unambiguous language of the IDVA, review of the underlying proceedings demonstrates that the trial court failed to apply the act. And instead, in direct violation of the act, the trial court failed to enter an order where abuse had occurred, failed to conduct a mandatory statutory analysis under Article 7 of the Criminal Code, improperly placed the burden as to respondents, affirmative defense of self-defense, onto the petitioner, and imposed limitations on the petitioner's remedies that are not prescribed for in the IDVA. The trial court's analysis tracked neither the language nor the purpose of the act and, in fact, flipped the IDVA on its head by focusing almost exclusively on the petitioner's actions as opposed to the respondent's. And because the IDVA expressly prohibits both that analysis as well as the earlier-mentioned mid-failures, the petitioner respectfully requests the Court reverse the denial of the petitioner's order of protection. Mr. Paulson, didn't that require in this case that the trial judge would do a credibility assessment of the witnesses? Isn't that part of what they do, is determining whether that witness is credible or not? Yes, Your Honor. And how do we reverse that? Well, there are three issues on appeal, two of which are under De Novo's standard of review. The trial court clearly erred by failing to do the statutory analysis under Article 7 of the Criminal Code. That's mandated by the IDVA, which did not happen here under De Novo's review. So let's walk through that. So there's specific criteria, and tell us where the trial court erred on that one. Of course, Your Honor. In Illinois, to prove self-defense, the defendant has to meet seven elements. Six. Six. You're right. You got me. Six elements, one of which is whether the person threatened was the aggressor. And this is arguably the only element that the trial court assessed. Again, from the very beginning of the trial court's assessment, he framed the issue as who is the aggressor. But the IDVA expressly prohibits review of a petitioner's actions unless, first, there's a finding of abuse and whether a determination of that abuse was excused as justified force under Article 7 of the Criminal Code. And whose burden is that? To determine the self-defense burden is on the Respondent. It's an affirmative defense. And so back to your question, Justice Berg, is that the only element that was arguably analyzed here is who was the aggressor. First, that is an improper framing of the issue because it's whether there was abuse and then we'll get here, which would never happen. So it was the cart before the horse. Exactly. By collapsing the two, the two-step process into a one-step process, the cart's over. But even though the credibility analysis is there, the review of these facts clearly shows that the Respondent was the aggressor on the events of March 14th, from the very beginning. It was Respondent's own testimony that he initiated the confrontation on March 14th because, quote, he had a bone to pick with her. Right. But didn't the trial judge actually find he wasn't the initial aggressor because he said something about throwing the money wasn't really any kind of a physical assault or any kind of assault? Exactly. Didn't he do that? He did. All right. Well, isn't that a credibility determination? He was the – I know this was on Zoom, but the witnesses testified. Yeah. That was a credibility analysis. But again, the analysis, it was wrong under the IDDA. The trial court focused almost exclusively on physical aspects of the confrontation on that night. The judge did not really weigh the undisputed evidence of the harassment that was taking place following the Petitioner throughout the home while she was carrying the children. I ask you a question about your brief. On page 24, you make the comment that the Petitioner presented uncontroverted testimony that the Respondent abused her repeatedly over the course of their relationship. What do you mean by presented uncontroverted testimony? The Petitioner and the Respondent both testified, and they both had differing facts about what happened. So how do you make this kind of statement in your brief? Yes, Your Honor, I think for several reasons. First, just on the March 14th incident, the abuse that occurred, the Respondent does not dispute that he followed the Petitioner through the home because he had a bone to pick with her and threw money. Under the IDDA, the IDDA seeks to prevent not only physical abuse but harassment. Yeah, I understand. I just – I don't know how you can realistically suggest to us that there was uncontroverted testimony when the Respondent testified about each incident. Yeah. And his testimony was not, you know, matching what the Petitioner said at all. Well, Your Honor, I would have to disagree. I'm not – I just think that it's – I don't find that this comment is appropriate when there are two different people testifying and they each give testimony regarding what they believe occurred on a given day. So – Well, Your Honor, if I may, in the 2015 analysis, I believe it was in the September incident. The Respondent did not dispute throwing the coffee table, did not dispute that the coffee hit there, did not dispute that. No, there are certain things he did not dispute. But to suggest that this was uncontroverted evidence throughout just makes absolutely no sense, and it's really not true to the testimony. That's all I'm just saying. You also emphasize in your briefs repeatedly the facts that Petitioner testified to as if there wasn't any other evidence. I mean, I understand that, but, you know, you relied solely on her testimony and then you make this remark about the uncontroverted testimony. Anyway, what about these two cases? Is this the best you could do with the aggressor thing, the workers' comp cases? Do you find any criminal cases about self-defense and who's the aggressor? Yeah. I mean, these are workers' comp cases. Well, in People v. Goya, if the defendant responds to a confrontation with such excessive force, they're no longer acting in self-defense but in retaliation. I think that is exactly what happens here, and Respondent's testimony shows that there was no subjective. Back to your question, Justice Burke, was that, you know, a review of the facts showed that Petitioner was not the aggressor. But also there is no testimony that was ever provided at the plenary hearing that the Respondent had any subjective belief of imminent harm. In fact, the only testimony he really provided about it was that he reacted by hitting Mrs. Richardson back immediately. That's retaliation. And again, in the self-defense analysis looking at People v. Goya, when such excessive force is used, that original person who is threatened is no longer the person threatened but the aggressor. That's retaliation, which has happened here. And again, Your Honor, going to the credibility analysis, the Court did fail to work through much of the evidence. For example, again, in Illinois, the person threatened must not only have a subjective fear, but that fear must be objectively reasonable. Here, you can't look at these facts and find that a trained MMA fighter who had been the aggressor harassed the Petitioner by following her around throwing money over her had a ---- But what is that trained MMA fighter? I'm sorry, Your Honor. Mixed martial arts. I know it's in the brief. Okay. Yeah. That was in the record. That is in the record. Did he agree that he was trained in mixed martial arts? There was no dispute that he was trained in mixed martial arts. So even if the Court had applied these factors, that, A, there was no evidence to find a subjective belief, but that subjective belief would have to be objectively reasonable. Review of these facts, it wouldn't be against the manifest weight of the evidence if under a credibility analysis that your Court, this Court can do today. But in addition, the Court never applied the IDB and did this analysis itself. One of your other challenges, I think, that you have made is that the judge here sort of diminished the prior incidents and in doing so said something about, well, she got some relief here, so I'm not going to, this is, it's losing its relevance. You do challenge that, don't you? Yes. And thank you for bringing that up. For the second de novo review is whether the trial court erred by failing to consider all four instances of abuse. And it's fairly clear from the record that what, that all four instances were not considered. The fact that the Petitioner had filed for an emergency protection order in 2015 really has no bearing on the language of the IDBA, which states that a court shall consider the frequency, severity, pattern, and practice of the Respondent's past abuse. What about this, the finding by the judge? He really thought that her credibility went out the window, so to speak, when she expanded on everything that was in the petition. Well, two points on that, Your Honor. For one, it was only the, it was only one of the instances of abuse, June 30th, that the court found that it was expanded beyond the petition. I would respond to that saying that the material facts were pled and that she did not need to provide all. Wasn't that the most recent? It was not March 14th, 2021. Okay. So it was the one previous. Yes, Your Honor. The one immediately previous. Yes. But I would just respond that the trial court, while making credibility analysis as to the Petitioner, again, puts the focus on the Petitioner seeking an order of protection for the abuse and doesn't give enough weight to what the Respondent  did. And, in fact, in discounting the credibility of the Petitioner, fully discounts two witnesses that the Petitioner called that corroborated the testimony of the events that he. The family members? Yes. Both her mother and her sister testified and provided evidence in support. She provided photographs demonstrating and showing the extent of the injuries that she's had on two different cases and contemporaneous medical records that were provided. The court could have considered all this and was, in fact, mandated through the IDVA to consider this past abuse, and it did not. And on record page 204, the court makes that pretty clear. The court stated, what we have here is that there was a fight between two people on March 14th, 2021. That's where I placed my focus. Whether that's right or wrong, that's where I placed my focus. But that focus was wrong. The focus was under a totality of the circumstances looking at the entire scope as mandated by the IDVA. To say that a court shall consider the nature of frequency, pattern, and practice of prior instances of abuse. And in failing to do so, that was wrong as a matter of law by the trial court, Your Honor. And I would just go back really quickly to the self-defense claim. As the trial court's order stands as is, it can mean one of two things. Either the Petitioner was abused, that abuse was excused under Article VII of the Criminal Code, or that a trial court's determination that a victim was the aggressor disqualifies her from the protections of the IDVA. And we know under the plain language of the statute that that cannot be. And as this trial court stands, it imposes limitations on both the Petitioner and future victims. That signals to them, if a victim is seen as provoking their aggressor, they run the risk of not receiving the protections that the Illinois State Legislature has mandated. The focus is shifting. The focus that should be on the abused is actually being looked at the abused to reduce the protections she's given. And this is signaling to victims and future victims that the IDVA will not be there to protect them. When in reality, oftentimes these situations are often that the victim is maybe just standing up for themselves or defending themselves in the context of their relationship, which again brings back the importance of the prior instance of abuse to consider at the totality of the circumstances. Because you have to consider this when looking at whether an order of protection shall apply. And it's for these reasons, unless Your Honor has any more questions, that the Petitioner seeks a reversal agreement to enter a protective order. Thank you, Mr. Foster. Good morning. You can remove your mask, too, if you would like. Thank you. Good morning. Good morning. May it please the Court. Ari Williams for Respondent, Elysia Booker. The hearing came down to credibility. Credibility of the witnesses. And particularly the Petitioner, Kathleen Richardson. The trial court, as a finder of fact, is in the best position to observe the conduct and the demeanor of the parties and the witnesses, and that's what happened here. The trial court's order and the petition denying the plenary hearing should be upheld. Counsel, that's a pretty low threshold here for the Petitioner to establish. Isn't that a preponderance of the evidence in order to get a plenary? That's a plenary hearing, correct. That's the preponderance of the evidence. And the evidence was reviewed, but at the end, the credibility was weighed. Witnesses testified, not just the Respondent and the Petitioner. The Petitioner had additional witnesses, the mother, the sister. And at the end of the day, the judge denied the plenary hearing. By preponderance of evidence, the Petitioner could not show that she had been abused. Could I ask you about the self-defense? You would agree, wouldn't you, that the burden to establish self-defense rested with the Respondent? I would agree. All right. And there are six elements that have to be shown. The unlawful force was imminent, the threat of unlawful force. The defendant was not the initial aggressor. The danger of harm imminent. I'm sorry. Unlawful force was the first one. And then the use of force was necessary. And that the defendant or the Respondent subjectively believed he was in danger, that this danger existed that required the use of force. And then the last one, that the defendant's beliefs were objectively reasonable. So, I mean, the judge really didn't go through any of this. He did sort of conclude, I guess, that the Petitioner was the aggressor, didn't he? Yes, Judge. And the judge didn't really go through the elements one by one. Right. In regards to the testimony from the most recent incident, which was March 14, 2021, where there was water thrown by Petitioner Kathleen Richardson that caused an abrasion and not on Mr. Booker. Mr. Booker was in reasonable belief that he was in imminent danger. Not only was water thrown at him, the testimony revealed that he was actually injured. Although there weren't any pictures shown, he testified to the actual incident. And he testified that his response was punching her in the back of the head. Well, not punching her. He shoved her. Correct. He shoved her? Which one is it? He hit her in the back of the head. That is correct, Your Honor. And it caused an egg-like lump to form. She did go to the emergency room, didn't she? That's what she testified to. Okay. And there was evidence that she did go. Well, there weren't any medical records. Her testimony, and there were pictures from the actual incident, but there weren't any medical records that were presented to reveal that. All right. Wasn't the respondent the initial aggressor? I mean, throwing money up in the air around her head, I mean, why isn't that aggression? Well, the judge ruled on that in regards to the money not being physical, essentially. The respondent testified that he threw the money. Counsel, are you saying that the action of the respondent throwing money at her, following her down a hallway, throwing money over her head, is not an aggressive action? It's not a physical action. So is the mere fact that it's not a physical action to take it out of abuse? It's not abuse. It wasn't abuse. There was an argument. He could say anything and do anything as long as he wasn't physically touching her. It's not abuse. No. The actions that he was saying weren't violent in nature. They weren't physical in nature. They didn't harm the petitioner at all. What harmed someone was the water bottle that was thrown and that hit the respondent in his face, causing a marking on his face. As a reaction to that, he struck the petitioner, reacting to her act of physical violence towards him. I got it. So six years ago, he was convicted of a violent act against the respondent. Is that correct? Or there was a plenary order of protection issued in 2015. There was an emergency order of protection. The petitioner didn't move forward with the order. So it was just an emergency order of protection. Yes, the petitioner didn't move forward. Okay. And in that instance, the court in this instance decided that that wasn't relevant. That that was relevant. In 2015, he disregarded the 2015 incident because he thought it was too remote in time. Well, he didn't completely disregard it. He took it into consideration, but he gave it minimal consideration because there was an opportunity for remedy then. The petitioner filed an order of protection. She didn't move forward. What she essentially tried to do in this hearing was get another bite at the apple. And because of that, the judge ruled that it was remote in time. She had an opportunity. Ms. Williams, what case, what authority did the judge base this decision on that because you were able to get relief from an earlier form of abuse, that that no ‑‑ then this doesn't really impact the issue before the judge? I mean, where is that coming from? I don't know of any authority that says you disregard or you find something less significant because there was relief granted on a prior emergency or plenary order of protection. Where is that coming from? And, Your Honor, I understand that. It wasn't that that incident wasn't the end all, be all for the judge's ruling. It was the totality of the circumstances. So not only did he take into consideration the remoteness of time and the fact that she was able to get relief, again, he looked at the credibility. So it was that. It was a testimony from the responder that he found credible, and it was also the beyond the scope, the petitioner's testimony that was beyond the scope of the actual order of protection, beyond the four corners. Many incidents that she brought up regarding those ‑‑ the domestic violence that she allegedly faced was not in the petition. So ‑‑ Let me ask you this, though. What would you argue establishes, I mean, the self‑defense or use of force was the burden of your claim. What would you say that how does the record support him having a subjective belief that a danger existed that required his return of force when he ‑‑ whatever he did to the back of her head that created like an ache automatically? What is there to suggest to us in the case law or something that you can provide us with that because she ‑‑ let's take it for true that she threw the bottle of water at him. Yes. To hit him in the eye. What then gives him the subjective belief that this danger existed, that he needed to hit her in the head or push her against the wall? What? Well, I'll compare it to a case that was cited by opposing counsel. And that's the Gray case. And in the Gray case, the court ruled that it wasn't reasonably that the defendant was in danger. The defendant, in regards to biting from an individual, the defendant stabbed this individual with a knife. And that was well beyond the scope of self‑defense. Here, it's a little bit different. He was hit in the face with a water bottle causing a marking and in reaction hit her in the head. He didn't pick up a knife. He didn't go get a gun. He didn't shoot her. He didn't throw her down to the floor. He didn't drag her. He hit her in the back of the head in response to being hit in the face with a water bottle. That was half full. I understand your argument. Now, let's talk about his martial arts expertise. Yes. So, if he's an expert in martial arts, then how do you get to, from that, to argue to us that his beliefs were objectively reasonable? When he has the skills that obviously I don't have, I don't know if anybody else in this room does, but so how do you say that's objectively reasonable for him to respond when we know that he is, you know, an expert in martial arts and he has to react? Is that objectively reasonable? Well, the testimony wasn't that he was an expert. The testimony was that he took these MMA classes. That was the testimony. And he did take those classes. MMA requires holding and choke holds more acts other than hitting. That's a standard human nature reaction for an individual hitting someone and hitting them back. The testimony wasn't that, well, from the petitioner was that he grabbed her and he threw her to the ground, but the respondent's testimony was that there was a struggle, and he grabbed her to stop her from continuing to fight back at him, to hit him. Had he done more than just hit her? Had he actually thrown her to the ground? Had he used moves from the training that he received as an MMA fighter to fight her? That would be a different argument. But that's not what he did. What he did was hit her in response to him hitting him, one single hit. That's the testimony. What about the time he threw the table? That was testimony at the hearing as well. The time that he threw the table, the petitioner testified that the table was thrown at her. The sister was there. Her sister testified that the table was thrown at them, not specific towards them. That was the testimony from the sister. No, but when you throw a big object like that at somebody, isn't there a chance that they're going to be hurt? Was he really trying to just get it short of them, or what? I mean, what's the point of throwing the table in the first place? Well, the respondent testified that he was frustrated he threw the table because of that. Is it bad violence? The table didn't hit the individual. It's kind of hard to say that throwing a table isn't an act of violence. Well, it's an act of ‑‑ it's a bad decision, but I don't think it's an act of violence. Had he thrown the table at them and hit the petitioner with the table, I can understand that argument. Well, she could have hit. She was struck on her foot or ankle. There was some dispute about where it was. A piece of glass broke, and the glass hit her. That's not abuse. Well, I don't know. I mean, I think throwing a table is an expression of some kind of violence. Are we going to give a bad message here that you can throw tables and that there can be mutual fighting and that this is all good? We're not ‑‑ here's the message. If the decision was overturned, here's the message that we will be giving individuals. We will be giving individuals who have experienced, who have started, or who's violent themselves towards an individual. We will give them the right to be violent to someone without retaliation. We will give an individual ‑‑ I'm sorry, Your Honor. Go ahead. You finish. I'm sorry. No, you finish. We will be giving individuals who feel that they can file an order of protection against an individual when they're upset, when they have no basis for a valid order of protection, when they have not been abused the right to continue to file these orders of protections and potentially ruin someone's life when they haven't been abused, when they're real domestic violence advocates and individuals who really face this type of violence. Kathleen Richardson is not one of those. Kathleen Richardson was not abused in any sorts by Alainzia Broeker. Again, her credibility was determined by the premier union judge. And she wasn't very credible. How can you say he wasn't the initial aggressor? He actually said he had a bone to pick with her because he was upset about some travel plans and that she was suddenly changing them. So he came home. I think she testified he was intoxicated, but that, you know, he started this whole thing of throwing the dollars, the money, whatever, around her and above her head. I mean, why isn't he the aggressor? That wasn't the only testimony, Your Honor. Didn't he admit that he had a bone to pick with her? And didn't he, in fact, conceive that he started throwing these bills around her head? Correct. And moving and following her? Correct. Why isn't that aggression? Well, it started because of an argument when he arrived home. So he testified to the reason that they argued, and he was upset. So he did throw the money, not in acts of harming her. He testified that she was wasting money. Things like this are common sometimes in relationships. Not the hitting, not the fighting. That should not be tolerated. But he wasn't the one who started the physical altercation. Him throwing money in the air, not on her, but in the air, is not an act of violence. She started the act of violence by picking up a water bottle, throwing it at him, and striking him in his face. That was the start of it. Do you think that the use of force was necessary when he struck her or whatever you're going to say in response to her? Even if we say and we agree that she hit him in the eye when she threw the bottle at him, are we really going to say that this use of force was necessary? That's one of the burdens of the person claiming self-defense. That's one of the six elements. It was necessary and it was objectively reasonable. That could have damaged him. There's two different elements. One is the use of force was necessary, and the other one is that the person's beliefs were objectively reasonable. It was necessary. That could have harmed him. Actually, it did harm him. He had an abrasion on his eye. I know, but I don't know where you – how do you say that that was necessary, that his force, you know, of hitting her was necessary? Why was it necessary? Why doesn't he walk away? Why didn't she walk away? Well, I'm not – you know, that's the thing. The focus is supposed to be on her. But the elements of self-defense in the Act, the Domestic Violence Act, is very precise about how and when it can be used. And I think that's really the primary argument that your opposing counsel is throwing here at you today, that you have not established the elements of self-defense in light of the Domestic Violence Act. I would like to take these elements one by one. Thank you. The unlawful force threatened against a person. So there was unlawful force against Mr. Booker. The water was thrown. The water bottle hit him in the face. The person threatened was not the aggressor. It is our position that Mr. Booker was not the aggressor. There was an argument that ensued. Kathleen Richardson took it upon herself to hit him in the face with the water bottle. The danger of harm was imminent. It was imminent. After she hit him with the water bottle, Mr. Booker's position is he didn't know what else would come after that. She hit him in the face. The use of force was necessary. And that's your question, Your Honor. In response, and Mr. Booker testified that it was almost immediately, it was in response to her hitting him, to stop her. Just in case anything else would happen. She had already hit him. This is not an individual that's not violent. She's violent. And that violence was exhibited by her using the water bottle to hit him in the face. So it was necessary to defend himself, to hit her back. Not with the knife, as in the Gray case. Not with anything else but his hand. Not with anything else but his hand. The person threatened action and subjectively believed the danger exhibited that required the use of force applied. There was a danger to protect himself. There wasn't argument anymore. She could have walked out the door as well. She could have left, but she didn't. She turned around and she hit him with something. The beliefs of the person threatened was objectively reasonable. It was reasonable to respond in that manner. Essentially defending himself. That is exactly what happened. And so today, the tally of the circumstances, I'm asking you to review that. Again, the trial court was better in determining. They had the best position to determine the credibility of the witnesses. Both individuals testified. The mother testified. The sister testified. Kathleen Richardson, not so credible. The trial court made the right decision in denying the plenary hearing. So I'm asking you to uphold that. Thank you. Thank you, Your Honors. Just a couple of quick points. Just saying it's objectively reasonable doesn't make it as such. And, in fact, the court said on record page 203, I can't say it's more probably true than not that she poured water than hitting him in the face with a water bottle. The court couldn't even determine whether the water was poured or whether there was blood on the surface. The respondent failed to meet his burden of proving self-defense. In addition to not being able to prove whether the water was poured or thrown, did not ever testify to a subjective belief and review of the facts. It would be objectively unreasonable to find a trained MMA fighter who struck Petitioner after she had already turned away. Whether she poured it or threw the water bottle, she had turned away. He hit her in the back of the head, resulting in an egg-sized bruise and bruising on the front of her face. That is abuse. And as, again, I would just also emphasize, abuse under Section 103 is broadly defined to include physical abuse, harassment, interference with personal liberty, or willful deprivation. Defines harassment as conduct not necessary to accomplish or a purpose that is reasonable under the circumstances. Any review of the facts would show that there was abuse taking place on the night of March 14th by stalking throughout the house, throwing the money over her head carelessly while she was trying to leave. And for those reasons, we would ask that the petitioner respect the request of a person in remand for entry of a protective order. Thank you, Your Honors. Okay, well, everyone, thank you for good arguments, and you give us a very interesting case, and you'll have a decision shortly.